**Elaine L. CHAO, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**Roma MALKANI, et. al, Defendants.**

**No. S–00–3941.**

United States District Court, D. Maryland.

July 9, 2002.

Joan M. Roller, Richard T. Buchanan, U.S. Department of Labor GA, Philadelphia, PA, Natalie A. Appetta, U.S. Department of Labor GA, Philadelphia, PA, Evert H. Van Wijk, U.S. Department of Labor, Kansas City, MO, for Plaintiff.

John C. Hayes, Jr., Leslie P. Machado, Nixon Peabody LLP, David W. O. Brien, Crowell and Moring LLP, Washington, DC, Glenn William Darrow Golding, Information Systems & Networks Corporation, Bethesda, MD, for Defendants.

## MEMORANDUM OPINION

SMALKIN, Chief Judge.

This case is before the Court on cross-motions for partial summary judgment on the plaintiff's second amended complaint, which charges the defendants with numerous violations and attempted violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.* (1999). The plaintiff claims that, starting in November 2000, the defendants, Roma Malkani and the Information Systems and Network Corporation (ISN), unlawfully attempted to transfer to ISN over $2.5 million of the assets of an ISN Employees' Pension Plan (the Plan). The plaintiff also argues that the defendants unlawfully ordered a third-party administrator to forfeit the pension accounts of several ex-ISN employees, based on an improper and unjustified interpretation of the Plan's vesting provisions.

The plaintiff asks this Court to find that Malkani's and ISN's actions constitute a breach of their fiduciary duties and warrant their removal as Plan fiduciaries. The plaintiff also requests a permanent injunction, barring the defendants from serving as a fiduciary to any ERISA-covered plan in the future. The plaintiff also requests the return of any monies transferred from the Plan to ISN as a result of these attempted violations of ERISA. The parties have briefed the issues fully and no oral hearing is necessary. Local Rule 105.6 (D.Md.2002). For the reasons set forth below, the Court will DENY the defendants' motion for partial summary judgment and GRANT the plaintiff's cross-motion for partial summary judgment.

### I. *Background*

ISN is a government engineering services firm located in Bethesda, Maryland, which has been in business since October 1, 1980. Roma Malkani is, and has been, the sole shareholder and Chief Executive Officer of ISN. The ISN Employees' Pension Plan was created in 1982. Malkani is chairperson of ISN's Pension Plan Committee, which is comprised of members of ISN's management personnel and employee participants in the Plan. The Plan's documents name the Committee as the Plan Administrator, which "shall construe and interpret the Plan, and shall determine all questions arising in the administration, interpretation and application of the Plan." The Administrator is a named fiduciary for the purposes of Title I of

ERISA. *See* ERISA § 402(a)(1) & (2), 29 U.S.C. § 1102(a)(1) & (2).

The Plan is a defined contribution plan under which ISN is required to make yearly contributions for each eligible ISN employee who completes more than 1000 hours of service during a Plan year in an amount equal to a percentage of the employee's compensation. From 1982 until the end of 1988, the Plan had a graduated vesting schedule whereby participants became vested in greater percentages of their account balances the longer they worked for the company. Since 1989, the Plan has had a "cliff" vesting provision whereby participants are not vested in any of their account balances until they complete five years of service with ISN, at which point they become 100 percent vested. A participant who terminates employment prior to vesting forfeits the non-vested portion of her account balance. The annual amount of forfeitures is applied to reduce ISN's annual required cash contribution to the Plan.

Throughout the life of the Plan, ISN performed limited administrative duties, but the Committee also hired "third-party administrators." In addition to various other duties, these administrators were responsible for calculating the amount of ISN's required annual contribution to the Plan and the participants' account balances at the end of each year.

A. *Grounds for the Original Complaint*

In November 2000, the plaintiff filed her original complaint, alleging that defendant Malkani violated Sections 404 and 406 of ERISA, 29 U.S.C. §§ 1104 and 1106, by failing to take any measures to ensure that ISN, the Plan Sponsor, made the required contributions to the Pension Plan in 1995 and 1996. According to the complaint, in April 1997, ISN made a contribution to the Pension Plan for 1995 in the amount of $204,367, seven months after the date it was required to make its 1995 contribution. The plaintiff argues that this contribution was deficient by approximately $70,000. The plaintiff also alleged that ISN was required to make a contribution to the Plan of approximately $90,000 for 1996, but made no contribution at all. The plaintiff further alleged that, regarding the payments ISN *did* make for 1995 and 1996, Malkani failed to allocate those contributions among the accounts of the Plan's participants.

The plaintiff's original complaint also alleged that the defendants had failed properly to allocate money to participants of ISN's Profit Sharing Plan, which was a separate defined contribution plan, established in 1984, pursuant to Section 401(k) of the Internal Revenue Code. In January 1996, the Pension and Welfare Benefits Administration (PWBA) commenced an investigation of the Profit Sharing Plan. As a result of its investigation, PWBA determined that ISN had failed to make timely deposits of participant contributions to the Profit Sharing Plan from January 1993 through August 1996. While ISN ultimately deposited the contributions, PWBA determined that the Profit Sharing Plan was owed $24,123 in lost interest because of the delinquencies and requested, *inter alia*, that ISN pay that amount to the Plan. After the investigation's findings were presented to ISN, it forwarded $24,123 for deposit in the Profit Sharing Plan's trust fund on or about January 15, 1998. The plaintiff's complaint alleges that the $24,123 was not allocated among participants' accounts for almost two years, until December 1999, despite repeated inquires from PWBA to ISN concerning the allocation.

B. *Temporary Injunctive Relief and the First Amended Complaint*

The Plan documents state that an employee becomes fully vested upon the completion of five years of service to ISN. In

April 2000, ISN directed Principal Financial Group (Principal), the Plan's recordkeeper and custodian of assets at the time, to forfeit the account balance of any terminated employee who had left the employment of ISN prior to *participating in* the Plan for five years, even if the employee had been employed with the company for five years. Principal did so, and the forfeited amounts were allocated to a separate account.

On November 29, 2000, the day after this lawsuit was filed, ISN's Chief Financial Officer, at Malkani's instruction, directed Principal to pay $435,761.52 to ISN for "plan administration expenses" for Plan years 1994 through 2000. This request, however, was accompanied by little supporting documentation, and Principal refused to pay ISN. Malkani again demanded payment to ISN, but Principal again refused and voiced concerns to ISN's counsel about the retroactive nature of the payments and their probable effect on participants' account balances. ISN subsequently submitted a more detailed invoice for Plan year 2000, in the amount of $62,888.05, which Principal paid. Despite Principal's refusal to release any more money, on May 24, 2001, ISN demanded $706,264.54, for administrative expenses in addition to the $62,888.05 already paid. Principal refused to make payment, and ISN terminated its contract with Principal.

At the defendants' direction, on August 17, 2001, the entire assets of the Plan, $6,404,738.65, were wired from Principal to Salomon Smith Barney, Inc. (SSB), and Malkani became trustee of the account. As trustee, Malkani would have had the authority to withdraw money from the account to pay ISN for the claims Principal repeatedly had refused.

Upon learning of the above activity, the plaintiff moved for a temporary restraining order to prevent ISN from gaining unrestricted access to the Plan's assets. The plaintiff also moved to amend her complaint, arguing that the attempted transfer of funds to reimburse the defendant for administrative costs violated ERISA. Also, the plaintiff argued that the defendants' order to Principal to forfeit the accounts of certain employees was illegal because ERISA requires that *all* of an employee's years of service be considered when an employer applies the vesting provisions of a pension plan. The plaintiff argued that both actions were further grounds for relieving Malkani and ISN of their fiduciary responsibilities.

This Court permitted the amendments and entered a temporary restraining order prohibiting the transfer of the Plan's funds to ISN. On September 5, 2001, this Court entered a consent order enjoining ISN from receiving any payment from the Plan until the case was resolved or the parties agreed to the payment.

## C. The "Overpayments" Demand and the Second Amended Complaint

On September 13, 2001, just one week after this Court entered the consent order, the defendants again attempted to transfer money from the Plan to ISN. This time, Malkani sent a letter to SSB directing the transfer of over $1.8 million of the Plan's assets to an ISN corporate account at SSB. SSB reported this activity to the plaintiff. The defendants asserted that ISN was entitled to the $1.8 million because it had been over-funding the Plan since its inception as a result of miscalculations by third-party administrators. The parties' counsel met on October 22, 2001, and thereafter agreed to a stipulated consent order, which again prohibited Malkani or ISN from receiving any Plan assets pending the outcome of this litigation.

When the parties were unable to resolve their dispute as to ISN's claim to the $1.8 million, the plaintiff again moved to amend her complaint. On December 5, 2001, this

Court granted the plaintiff's motion. The second amended complaint argued that the defendants' attempted transfer of the $1.8 million was a violation of their fiduciary duties and would have been a prohibited transaction under ERISA § 406(a)(1). *See* 29 U.S.C. § 1106(a)(1).

### D. The Parties' Arguments

In sum, the plaintiff now argues that the defendants' repeated conduct amounts to a breach of the fiduciary duties imposed by ERISA § 404(a). *See* 29 U.S.C. § 1104(a). The plaintiff argues that this breach is evidenced by the defendants' repeated attempts to transfer Plan assets to ISN in violation of ERISA § 406(a)(1) (one of which resulted in the transfer of $62,888.05), the defendants' failure to make adequate contributions to the Plan in 1995 and 1996, and their successful attempt to cause Principal to forfeit the pension accounts of persons who had not been enrolled in the Plan for at least five years. The plaintiff argues that ISN was in a state of financial turmoil, and that the defendants engaged in a series of acts in a desperate attempt to generate money to keep the business afloat. Moreover, the plaintiff argues that because a determination of whether the defendants violated ERISA is a legal question of statutory compliance, this Court should apply a *de novo* standard of review in deciding the issues now before it.

The defendants argue that this Court need only determine whether the defendants abused the discretion given to them as administrators under the Plan documents. Beyond that, the defendants argue that ERISA specifically authorizes employers to be compensated for administering pension plans and allows employers to be reimbursed for overpayments made under a mistake of fact. Moreover, the defendants claim that they have been consistent in their reading of the vesting provisions of the Plan documents, and that there was no abuse of discretion in ordering Principal to forfeit the account balances of any participants who left ISN without being enrolled in the Plan for five years.

### E. Issues Before the Court

The parties' cross-motions for summary judgment ask this Court to decide whether the defendants violated their fiduciary duties under ERISA and thus should be removed permanently from any position which allows control over the Plan's assets; whether the 2000 transfer of $63,888.05 from the Plan to ISN for "administrative expenses" was a prohibited transfer under ERISA § 406(a)(1), thus warranting its return to the Plan; and whether ISN failed to make the required contributions to the Plan for 1995 and 1996.[1]

For the reasons set forth below, the Court will GRANT summary judgment in the plaintiff's favor on all but the last of these issues. There are genuine disputes as to the amount ISN was required to pay for Plan years 1995 and 1996 and the extent to which that amount was satisfied by legitimate pension forfeitures from previous years.

It should be made perfectly clear to counsel that this Court is in no position to determine whether, or to what extent, ISN can recover money from the ISN Pension Plan or the Profit Sharing Plan.[2] The case

---

1. The parties have not moved for judgment as to their dispute concerning the ISN Profit Sharing Plan.

2. Three nearly identical footnotes in the defendants' motion for partial summary judgment imply that this Court will ultimately decide this issue. For example, the defendants state: "ISN is not moving for summary judgment on the exact amount that should be returned to ISN; only on the legal issue that ISN is entitled to return of mistaken contributions is being presented to the Court by this

now before the Court involves only the claims of the Department of Labor against the named defendants, including ISN and both plans. ISN has made no cross-claim against either plan under Federal Rule of Civil Procedure 13, and this Court will not use the present case as a forum to decide all disputes that may exist among the many parties. Moreover, even if ISN properly had brought a cross-claim against either plan, it is readily apparent that ISN and both plans are represented by the same attorneys, implying an impermissible potential conflict. Thus, although the parties to this case dispute whether the Plan owes ISN money, that question is relevant only to determining whether ISN violated ERISA, not to determining whether the Plan must transfer some still-undetermined amount of money to ISN. If ISN wishes to recover overpayments, it may attempt to do so in a separate suit against the Plan—a suit in which the Plan must be represented by independent counsel.

## II. Standards of Review

### A. The Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252, 106 S.Ct. 2505. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but the opponent must bring forth evidence upon which a reasonable fact-finder could rely. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

### B. The Standard of Review in ERISA Cases

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 108–09, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court acknowledged that "although it is a comprehensive and reticulated statute, ERISA does not set out the appropriate standard of review." The defendants urge this Court to determine only whether their conduct amounted to an "abuse of discretion." The defendants cite *Shores v. Lucent Technologies, Inc.*, 203 F.3d 822, 2000 WL 20580 (4th Cir.2000), which is simply a reiteration of the rule, set forth in *Firestone Tire*, that if "the benefit plan gives

motion." Defs.' Mot. for Partial Summ. J. at 6 n. 4; *see also id.* at 11 n. 9 ("In this motion ISN does not seek a determination from the Court as to the amount of the mistaken contributions to be returned to ISN because there

is a factual dispute as to this amount."); *id.* at 16 n. 14 ("In this motion ISN does not seek a determination as to the amount of reimbursement it is entitled to receive. There is a factual dispute as to the amount.").

the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plans," a reviewing court may reverse the denial of benefits only on a finding of abuse of discretion. *Firestone Tire*, 489 U.S. at 115, 109 S.Ct. 948; *Shores*, 2000 WL 20580 at *3, 203 F.3d 822. In *Johannssen v. District No. 1—Pacific Coast District, MEBA Pension Plan*, 292 F.3d 159, 168–69 (4th Cir.2002), the Fourth Circuit clarified, however, that the "abuse of discretion" standard applies only in limited circumstances: "[A] reviewing court must initially decide *de novo* whether the plan's language grants the administrator discretion and whether the administrator acted within the scope of that discretion. If the reviewing court determines that the language of the plan does grant discretion in a particular area, it reviews decisions taken under that grant for abuse thereof. *In all other cases*, review is *de novo*." *Id.* at 169 (emphasis added) (citations omitted).

■ Only one of the issues now before the Court demands any consideration of the *Johannssen/Firestone* determination of standard of review: the defendants' attempts to interpret the Plan's vesting timetable as beginning on the date of employee eligibility as opposed to the date of employment. It would seem that such an issue would be within the Plan administrators' discretion so long as there were a clause in the Plan which delegated the discretion to determine eligibility. However, as discussed below (Part III.C.3), ERISA requires employers to take *all* of an employee's years of service into account when determining the extent to which an employee is vested. A plan cannot delegate to its administrator the authority to interpret the Plan if such interpretation would be a clear violation of ERISA.

■ The issues now before the Court demand simple determinations of whether the defendants' actions were violations of

ERISA. These are legal issues which the Court considers *de novo*, and they clearly do not invoke *Johannssen* and *Firestone*.

### III. *Discussion*

### A. *Removal of a Fiduciary for Breach of Duty*

ERISA § 404 imposes a "prudent man standard of care" by which any plan fiduciary must abide. 29 U.S.C. § 1104. This duty includes both a duty to act solely in the interest of the plan's participants and with "care, skill, prudence, and diligence." *Id.* § 1104(a)(1)(B). A plan trustee can run afoul of ERISA by failing to act in accordance with this general duty, or by violating more specific separate sections of ERISA. The separate section relevant here is Section 406(a)(1), 29 U.S.C. § 1106(a)(1). "Responding to deficiencies in prior law regulating transactions by plan fiduciaries, Congress enacted ERISA § 406(a)(1), which supplements the fiduciary's general duty of loyalty to the plan's beneficiaries, § 404(a), by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241–42, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000) (quoting *Commissioner v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993)).

A violation of either of these Sections can warrant removal of the fiduciary. ERISA § 409(a) provides: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach ... and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including re-

moval of such fiduciary." 29 U.S.C. § 1109.

The plaintiff in this case argues that several of the defendants' acts warrant their permanent removal under this provision. What is somewhat unusual in this case is that the acts about which the plaintiff most strenuously objects, to wit, the defendants' mere attempts to transfer over $2 million in Plan assets to ISN, did not actually result in a loss of Plan assets because of an injunction ordered by this Court. However, there need not be an actual loss for the defendants to breach their fiduciary duties under ERISA § 404. *See* 29 U.S.C. § 1109 (allowing equitable relief independent of any financial loss that a breach of fiduciary duty may have caused). Attempted transfers of money, which, if completed, would have resulted in a violation of ERISA § 406, certainly speak to the imprudence of a plan fiduciary and can warrant that fiduciary's removal in furtherance of the plan's protection. *See id.; see also Brock v. Robbins,* 830 F.2d 640, 647–48 (7th Cir.1987) ("If the Secretary can prove to a court that certain trustees have acted imprudently, even if there is no monetary loss as a result of their imprudence, then the interests of ERISA are furthered by entering appropriate injunctive relief such as removing the offending trustees from their positions."). Indeed, Congress added ERISA § 406(a)(1) to prevent specific conduct that would violate the general duty imposed by Section 404(a). *See Harris Trust & Sav. Bank,* 530 U.S. at 241–42, 120 S.Ct. 2180.

For the reasons set forth below, the Court finds that the defendants have breached their fiduciary duties under ERISA § 404 by: (1) causing the Plan to transfer $63,000 in assets to ISN for past administrative services; (2) attempting to transfer an additional $2.5 million, which, if successful, would have been a transfer in violation of ERISA § 406(a)(1)(D) & (b)(1);

and (3) instructing Principal to forfeit the assets of Plan participants due to an interpretation of the Plan prohibited by ERISA.

**B. Fiduciary Status**

ERISA § 3(21)(A) explains: "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

Malkani and ISN are clearly Plan fiduciaries under this standard. Malkani is CEO of ISN and is chairperson of the Pension Plan Committee, which is the Plan Administrator, holding extensive privileges and responsibilities with respect to the Plan's assets. Moreover, she is currently the named trustee of the Plan's assets.

ISN also qualifies as a fiduciary under ERISA § 3(21)(A)(iii). According to the defendants, ISN has provided over $700,000 worth of administrative services to the Plan. Also, ISN, through its CFO and general counsel, arranged for the transfer to ISN of $62,888.05 of the Plan's assets. Moreover, both defendants admittedly are responsible for interpreting the vesting procedures of the Plan, thus qualifying as fiduciaries under § 3(21)(A)(i) and (iii).

**C. Breaches of Fiduciary Duty**

**1. Reimbursement for Administrative Expenses**

It is undisputed that, in November 2000 and May 2001, the defendants attempted to compel Principal to transfer $435,761.52 and $706,264.54, respectively, from the

Plan to ISN for "unreimbursed administrative expenses." While neither attempt was successful, the defendants ultimately succeeded in obtaining $62,888.05 in Plan assets for expenses incurred in the year 2000.

■ The plaintiff's first claim is that, in causing the transfer of $62,888.05 from the Plan to ISN for past administrative expenses, the defendants breached their fiduciary duties under ERISA § 404(a) and caused a transfer of Plan assets in violation of ERISA §§ 406(a)(1)(D) and (b)(1). Moreover, the plaintiff argues that the defendants' attempts to transfer the larger sums of money were further violations of their fiduciary duties because, if successful, they would have resulted in transfers prohibited by ERISA §§ 406(a)(1)(D) and (b)(1). These subdivisions of Section 406 state that "(1) a fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if [s]he knows or should know that such transaction constitutes a direct or indirect . . . (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan;" and that "[a] fiduciary with respect to a plan shall not . . . (1) deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. §§ 1106(a)(1)(D) & (b)(1).

ERISA § 406(a) makes § 408 the exclusive means by which a fiduciary can transfer money to a party in interest. *See* 29 U.S.C. § 1106 ("[e]xcept as provided in section 1108 . . . ."). The only subsection of § 408 relevant here states that "[t]he prohibitions provided in section 1106 . . . shall not apply to any of the following

transactions: . . . (2) Contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2). The defendants argue that ISN is entitled, under this subsection, to reimbursement for services provided since 1983.

Certainly, an interested party can be reimbursed by a plan for administrative costs. The regulations passed pursuant to ERISA § 408(b), however, make it clear that payment by a plan to a party in interest is exempt from the prohibition of § 406(a) only if: "(1) Such office space or service is necessary for the establishment or operation of the plan; (2) Such office space or service is furnished under a contract or arrangement which is reasonable; and (3) No more than reasonable compensation is paid for such office space or service." 29 C.F.R. § 2550.408b–2(a)(1)–(3) (2001). The defendants have not offered sufficient evidence to satisfy any of these three requirements. First, the defendants have offered no evidence of the particular services that ISN provided for the Plan or how those services were "necessary for the establishment or operation of the plan." Second, the defendants offer no evidence of any reasonable "contract or arrangement" under which the defendants would handle the Plan's administration with the expectation that it would be reimbursed at a later date.[3] The defendants have offered no evidence that ISN was monitoring, over the past eighteen years,

---

**3.** Indeed, as pointed out by the plaintiff, there is evidence in the record which indicates that the defendants had no intention of charging the Plan for administrative costs: "The following evidence clearly demonstrates this fact: (1) ISN's audited financial statements for 1995 through 1998 show no account receivable for Plan administration expenses; (2) ISN never reported any amounts owed by the

Plan as a receivable; (3) ISN's practice is to bill its clients on a regular basis for services rendered and yet ISN never billed the plan; and (4) ISN admits in Note 5 of its 1995–1998 financial statements that it would incur the cost of administration services performed by its employees." Pl.'s Mot. for Part. Summ. J. at 27.

the expenditures incurred in administering the Plan. Finally, without any evidence of the services actually provided, or of the actual cost of those services, the defendants cannot show that the compensation requested was "reasonable." [4]

The transfer of $62,888.05 was a transfer to a party in interest in violation of ERISA §§ 406(a)(1)(D) and (b)(1), and the defendants have failed to offer evidence that this transaction was permissible under ERISA § 408. Thus, the plaintiff is entitled to summary judgment on this issue, and the accompanying order will provide for the return of these funds to the Plan. Moreover, the defendants have failed to offer evidence that either of the two attempted transfers falls under the lone relevant exception to § 406. These attempted transfers would have violated ERISA, and they are clear evidence of the defendants' breach of their fiduciary responsibilities. These attempted violations of ERISA, in combination with the defendants' conduct described below, warrant the removal of Malkani and ISN fiduciaries pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a).

### 2. The Attempted Transfer for "Excess Contributions"

■ It is also undisputed that the defendants attempted to cause the transfer of over $1.8 million in Plan assets to ISN on or about September 13, 2001. The plaintiff alleges that such a transfer clearly would have violated ERISA §§ 406(a)(1)(D) and (b)(1), and, therefore, is further evidence of a breach of fiduciary duty. The defendants claim that since 1982, ISN made excessive contributions to the Plan based on errant advice of "third-party administrators." Thus, the defendants argue that they were entitled to recover $1.8 million (about 17% of the Plan's total assets) on a "mistake-of-fact" theory.

ERISA § 403(c)(1) states that, with limited statutory exceptions, "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1).[5] The relevant exception here, ERISA § 403(c)(2)(A)(i), states: "In the case of a contribution ... [which] is made by an employer to a plan ... by a mistake of fact, [ERISA § 403(c)(1)] shall not prohibit the return of such contribution to the employer within one year after the payment of the contribution." 29 U.S.C. § 1103(c)(2)(A)(i).

Thus, if the defendants could prove entitlement to the benefit of this exception, their attempts to recover the allegedly mistaken payments might not run afoul of ERISA or the duties imposed thereunder. The defendants admit that the supposed excessive payments occurred from 1983 until 1997, and that they made no attempt to recover the payments until 2001, obviously more than one year after the final payment. The defendants argue that they were not aware, nor should they have been aware, of the excessive contributions because they had relied on the advice of "third-party administrators,"[6] and that the

---

4. Even the defendants are indecisive as to the value of ISN's services, the requested compensation leaping from $435,761.52 to $706,264.54 in six months' time.

5. ERISA § 404 specifically takes § 403(c)(1)'s anti-inurement provision into account in setting forth a plan fiduciary's duties of loyalty and care. *See* 29 U.S.C. § 1104(a)(1).

6. Interestingly, the defendants ask this Court to find that ISN was so involved in the administration of the plan that it is entitled to over $700,000 for administrative services, but also that it was so far removed from the Plan that the defendants should not have known the amount owed in contributions.

one-year time limit of § 403(c)(2)(A)(i) should not begin to run until the employer discovers the mistake.

In support of this proposition, the defendants rely on *Reuther v. Trustees of the Trucking Employees of Passaic and Bergen County Welfare Fund*, 575 F.2d 1074 (3d Cir.1978). In *Reuther*, the plaintiff requested a distribution that was denied four months later on the basis that the plaintiff was a managerial employee of the sponsor and thus not eligible for benefits. The company had continued to make contributions on the plaintiff's behalf while the claim was pending. Immediately upon the denial, the plaintiff requested a refund of all contributions made by his company on his behalf. The court allowed the refund to cover contributions extending back four months beyond the one-year limit set forth in § 403(c)(2)(A)(i), because the four-month time lapse between plaintiff's application for benefits and the plan's denial was attributable to the plan's trustee. *Id.* at 1078. "[W]ithout purporting to establish a rule, but deciding only that the unusual circumstances of this case call into play equitable principles," the court allowed a refund of the additional four months of contributions. *Id.* at 1079.

Thus, the defendants ask this Court to rely on an admittedly narrow holding of the Third Circuit to allow recovery of contributions extending up to 18 years beyond the one-year limit. The plain language of ERISA sets the date of the erroneous payment as the start of the limitations period. 29 U.S.C. § 1103(c)(2)(A)(i); *see also Teamsters Local 639 Employers Health Trust v. Cassidy Trucking, Inc.*, 646 F.2d 865, 867 (4th Cir.1981) ("It is undisputed that an employer could not recover payments made more than a year before filing a claim for a refund under [29 U.S.C. § 1103(c)(2)(A) ].").  This Court finds no reason to disregard the plain language of ERISA in finding that attempted recovery at this late date is permitted by the statute. The Court's decision in this regard complies with the Fourth Circuit's long-standing admonition against interpreting any given statute to mean something other than what is expressed by its plain language:

> Statutory interpretation necessarily begins with an analysis of the language of the statute. If the language is plain and "the statutory scheme is coherent and consistent," there is no need to inquire further. "[T]he sole function of the courts is to enforce [the statute] according to its terms." Therefore, courts should venture beyond the plain meaning of the statute only in those rare instances in which there is a clearly expressed legislative intent to the contrary, in which a literal application of the statute would thwart its obvious purpose, or in which a literal application of the statute would produce an absurd result.

*Maurice Sporting Goods, Inc. v. Maxway Corp.*, 27 F.3d 980, 982–83 (4th Cir.1994) (citations omitted).

Here, literal application of the statute produces no absurd result, and, to the extent that *Reuther* stands for a different interpretation of the statute, it is nonpersuasive.

In the judgment of this Court, if successful, the defendants' attempted transfer of $1.8 million would have violated ERISA's anti-inurement provision and would not have been permissible under the mistake-of-fact exception. This attempted transfer also would have resulted in the depletion of 17% of the Plan's total assets. Such conduct clearly speaks to the defendants' adherence to the duties of care and loyalty imposed by ERISA § 404(a), and, in combination with the other findings of this Opinion, warrants the defendants' removal as fiduciaries.

### 3. The Defendants' Interpretation of the Plan's Vesting Procedures

■ Finally, the plaintiff argues that the defendants violated their fiduciary duties by ordering Principal to forfeit the account balances of several ex-ISN employees in April, 2000. ISN made this order based on its interpretation of the Plan's vesting procedures, which the parties now dispute.

According to Section 3.1 of the pension plan, an ISN employee is eligible to become a Plan participant after completing one year of service. Under Section 6.1, an employee's pension becomes 100% vested after five years of service. To determine whether an employee has completed five years of service, the Plan sets forth the following definition:

> 2.26 *Year of Service* shall mean: (a) any Plan Year during which an Employee has not less than 1,000 Hours of Service with the Company; and (b)(i) solely for purposes of Article VI hereof [the Article setting forth the 5–year requirement for vesting], the 12–months' period beginning with the date the Employee's employment with the Company commenced if the Employee had not less than 1,000 Hours of Service with the Company during such period; (b)(ii) solely for purposes of Article VI hereof, the 12–months' period beginning with the date the Employee's employment with the Company commenced if the Employee had not less than 1,000 Hours of Service with the Company during such period and neither the Plan Year beginning nor the Plan Year ending in such period was a Year of Service.

The plaintiff argues that prior to 2000, the defendants interpreted this vesting scheme to mean that an employee would become fully vested five years from the date of his hiring. ISN's April 2000 instruction to Principal, however, was to forfeit the accounts of former employees who had worked for ISN for five or more years, but who had not been Plan participants for five years.[7] The plaintiff alleges that this was an unreasonable interpretation of the Plan's vesting procedures and is not consistent with the requirements of ERISA.

The defendants argue that the last clause of the above-quoted section of the Plan somehow justifies their interpretation that an employee must be a Plan participant for five years before becoming 100% vested. The defendants' argument is as follows: "This [Plan § 2.26] means that vesting would generally begin with the employee's date of employment (i.e., the date of hire), but the initial year during which the employee is gaining eligibility to participate in the Pension Plan does not count towards vesting because that year is a year in which a Plan Year beginning or ending was a Year of Service."

Not only is the defendants' argument nonsensical, but such an interpretation of a plan's vesting procedure is prohibited by ERISA itself. ERISA § 203(b)(1) provides: "In computing the period of service under the plan for purposes of determining the nonforfeitable percentage under subsection (a)(2), all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account ...." 29 U.S.C. § 1053(b)(1). A "'year of service' means a calendar year, plan year, or other 12–consecutive–month period designated by the plan ... during which the participant has completed 1,000 hours of service." *Id.* § 1053(b)(2)(A). Moreover, 29 C.F.R. § 2530.203–2(a) states, in pertinent part, "[A] plan may

---

7. This resulted in the forfeiture of the accounts of several former ISN employees who had already received notices from Principal indicating that their pensions were 100% vested.

designate any 12–consecutive–month period as the vesting computation period.... The plan is prohibited, however, from using any period that would result in artificial postponement of vesting credit, such as a period measured by anniversaries of the date four months following the employment commencement date."

The defendants' interpretation of the Plan's vesting procedure, and the forfeiture of accounts made pursuant thereto, violated ERISA § 203(b)(1)'s requirement that all years of service be taken into account in determining vesting and 29 C.F.R. § 2530.203–2(a)'s prohibition against artificially postponing vesting credit. *Cf. Jones v. UOP*, 16 F.3d 141, 143 (7th Cir.1994) (Judge Posner noting that generally, in determining whether an employee's pension benefits have vested, "the employer is required to count all the employee's years of service, before and after ERISA"); *Chambers v. Kaleidoscope, Inc. Profit Sharing Plan and Trust*, 650 F.Supp. 359, 366 (N.D.Ga.1986) ("Under the minimum vesting standards of ERISA, all of an employee's years of service with the employer since the plan was maintained must be calculated for the purpose of determining the employee's nonforfeitable percentage."). Moreover, the defendants' interpretation is simply unreasonable in light of the plain language of the Plan. Thus, even if the defendants' interpretation was not barred by ERISA, it would be an abuse of discretion to so interpret the Plan and to forfeit the accounts of employees who previously had been 100% vested. This conduct is further evidence of the defendants' failure to comply with the fiduciary duties imposed under ERISA.

### D. *Appropriate Relief*

■ Because of the defendants' specific violations of ERISA Sections 406(a)(1)(D) and 203(b)(1), and their repeated attempts to transfer funds to ISN's benefit in violation of ERISA and without legal justification, this Court finds that the defendants breached the fiduciary duties imposed by ERISA Section 404(a). Based on this finding, and pursuant to ERISA § 409(a), the Court will remove, and permanently bar the defendants Malkani and ISN from any position as fiduciary, as that term is defined under ERISA Section 3(21)(A). The Court will appoint an independent fiduciary with authority to administer the Plan. This relief is especially appropriate in light of the defendants' persistent attempts to transfer the Plan's assets to ISN even after this lawsuit was filed and after this Court issued a temporary restraining order enjoining such transfers.

The Order also will provide for the return of the $62,888.05 transferred to ISN in violation of Section 406(a)(1)(D). As for the defendants' order to Principal to forfeit the account balances of previously vested employees, there is no triable issue that such action constituted a violation of ERISA. The plaintiff has not requested any specific relief on behalf of the divested employees, and, therefore, this Court will grant no such relief at this time.

### ORDER

For the reasons set forth in the Memorandum Opinion, it is this 9th day of July, 2002, ORDERED:

(1) That the plaintiff's motion for partial summary judgment BE, and it hereby IS, GRANTED;

(2) That the defendants' motion for partial summary judgment BE, and it hereby IS, DENIED;

(3) That the defendants Roma Malkani and Information Systems and Network Corporation BE, and they hereby ARE, REMOVED from any position holding fiduciary authority over the ISN Employees' Pension Plan;

(4) That the plaintiff name an independent trustee to substitute for the removed defendants, with all costs, expenses, and the like in connection therewith to be paid by the defendants;

(5) That defendants return to the ISN Employees' Pension Plan monies in the amount of $62,888.05, which was transferred in violation of ERISA § 406(a)(1)(D); and

(6) That the Clerk of the Court send copies of this Order and Memorandum Opinion to counsel for the parties.