PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ELAINE L. CHAO, Secretary of Labor,
United States Department of Labor,
                    *Plaintiff-Appellee,*

                    v.

ROMA MALKANI; INFORMATION
SYSTEMS & NETWORKS CORPORATION,
                    *Defendants-Appellants,*

                    and

INFORMATION SYSTEMS AND NETWORKS
CORPORATION EMPLOYEES' PENSION
PLAN; INFORMATION SYSTEMS AND
NETWORKS CORPORATION PROFIT
SHARING PLAN; SALOMON SMITH
BARNEY, INCORPORATED,
                    *Defendants,*

CLARK CONSULTING,
                    *Party in Interest.*

No. 05-1654

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
William D. Quarles, Jr., District Judge.
(CA-00-3491-8-WDQ)

Argued: May 24, 2006

Decided: June 22, 2006

Before WILKINSON, TRAXLER, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Traxler and Judge Gregory joined.

## COUNSEL

**ARGUED:** John Carney Hayes, Jr., NIXON PEABODY, L.L.P., Washington, D.C., for Appellants. Evan H. Nordby, UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor, Washington, D.C., for Appellee. **ON BRIEF:** Leslie P. Machado, NIXON PEABODY, L.L.P., Washington, D.C., for Appellants. Howard M. Radzely, Solicitor of Labor, Timothy D. Hauser, Associate Solicitor for Plan Benefits Security, Karen L. Handorf, Counsel for Appellate and Special Litigation, Elizabeth Hopkins, Senior Appellate Attorney, Adam Neufeld, UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor, Washington, D.C., for Appellee.

## OPINION

WILKINSON, Circuit Judge:

The Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. (2000), safeguards the assets of employee benefit plans by setting forth standards of conduct for fiduciaries who have discretionary authority over such plans. In this case, the district court held that defendant plan fiduciaries breached their fiduciary duties. The court removed them as fiduciaries of the plan, and required them to remunerate it for the losses that resulted from their misconduct. While ERISA fiduciaries should not be removed lightly, we conclude that defendants' actions — including attempts to raid the plan's assets and deprive employees of vested benefits — constitute an egregious misuse of authority that justified the district court's remedies. We thus affirm the judgment.

### I.

Defendants are Information Systems and Networks Corporation (ISN) and Roma Malkani. ISN offers engineering services primarily

to federal and state governments; Malkani is ISN's president and sole owner. In 1982, in order to procure and retain talented employees, ISN established the ISN Employees' Pension Plan ("the Plan"), a defined contribution plan governed by ERISA. The Plan required that ISN make an annual contribution to a trust fund for each eligible employee. The contribution amount was based on a percentage of the employee's income. Upon retirement, the employee would receive the contributions made on his behalf, plus or minus any investment gains or losses.

The ISN Pension Plan Committee operated as the plan administrator. Malkani chaired this committee. The committee hired a "third-party administrator" to perform many administrative functions for the Plan, which included, inter alia, calculating ISN's annual required contribution, determining which employees had become fully vested and which had forfeited their benefits, distributing Plan assets to retired employees, and reimbursing other entities for their expenses in administering the Plan. Over its life, the Plan has employed four different third-party administrators, including Principal Life Insurance Company ("Principal") and Salomon Smith Barney, Inc. ("Salomon").

From 1982 to 1994, ISN provided annual contributions to the Plan in the amounts that third-party administrators indicated were required. In 1995, however, it stopped making payments at all. Since that time, it has only provided the Plan with one payment of $204,367, notwithstanding admonitions from third-party administrators that contributions were due.

Ultimately, ISN's refusal to make its annual contributions brought on this litigation. On November 28, 2000, the Secretary of Labor ("Secretary") filed suit against Malkani, alleging that she breached her fiduciary duties by failing to collect the required Plan contributions for 1995 and 1996. The Secretary later amended the complaint to encompass ISN's failure to contribute through 2003.

The day after the Secretary filed suit, defendants requested that Principal pay ISN $435,761.52 out of Plan assets for administrative expenses ISN allegedly incurred between 1994 and 2000. Principal responded that the Department of Labor (DOL) would probably not approve of the reimbursement, and that it might violate ERISA. In

additional correspondence, defendants again asked for these expenses, but Principal rejoined that ISN should seek DOL guidance because the request was "unusual due to the amount of reimbursement, its retroactive nature, and its coincidence with the DOL's lawsuit." In response, defendants limited their demand to $62,888.05 for administrative expenses allegedly incurred in 2000. Principal acquiesced to this new request and paid ISN out of Plan funds.

But defendants did not stop there. They subsequently ordered Principal to pay ISN an additional $706,264.54 in Plan assets — even more than they had previously requested — for administrative expenses. Principal refused. ISN thereafter cancelled its contract with Principal, and hired Salomon as the new third-party administrator. Malkani appointed herself trustee of the Plan while the transition took place, thus equipping herself with the ability to withdraw Plan funds.

Principal informed the DOL of these events. The Secretary responded by filing a motion for a temporary restraining order to enjoin defendants from transferring any additional Plan assets to ISN for administrative expenses. On August 16, 2001, the district court granted this motion, and the parties thereafter entered into a consent order in which defendants agreed not to seek administrative expenses until the ultimate resolution of the case. The Secretary also amended her complaint. She added ISN as a defendant, and alleged that Malkani and ISN breached their fiduciary duties by seeking Plan assets for administrative expenses and for separate conduct in which they interpreted the Plan's vesting provisions in a way that divested employees of their nonforfeitable benefits.

A few days later, defendants once again attempted to acquire Plan assets on the grounds that the Plan was overfunded. On September 13, 2001, Malkani — claiming that ISN had excessively contributed to the Plan — sent a letter to Salomon directing it to place approximately $1.86 million of the Plan's funds in an ISN corporate account. Malkani's order was predicated on the calculations of George Morrison, who provided administrative services to pension plans. Malkani had hired Morrison to review the work of former third-party administrators. Morrison concluded that the Plan was overfunded because third-party administrators had previously required ISN to contribute larger amounts than necessary. Morrison, however, never recom-

mended that Malkani seek reimbursement from Plan funds because he had made only an initial, incomplete assessment of the Plan.

Salomon alerted the DOL that Malkani had requested a large reimbursement, and the DOL objected. The parties eventually entered into another consent order forbidding ISN from obtaining any Plan assets until the outcome of the litigation. The Secretary amended her complaint once again to allege that defendants' latest request for Plan assets breached their fiduciary duties.

Both parties moved for summary judgment. The district court granted the Secretary's motion and denied defendants' request. It held that defendants breached their ERISA fiduciary duties, and ordered ISN to return the $62,888.05 in administrative expenses it had received from Principal. *Chao v. Malkani*, 216 F. Supp. 2d 505, 518 (D. Md. 2002). The district court also removed defendants as the Plan's fiduciaries, and barred them from ever again serving in this capacity for an employee benefit plan. *Id.* It concluded, however, that a trial was necessary to determine the amounts, if any, that defendants needed to compensate the Plan for ISN's repeated failure to make annual contributions. *Id.* at 510.

The district court held a three-day bench trial, and both parties called experts who opined on the amount that ISN owed the Plan. The Secretary's expert indicated that ISN owed the Plan $696,524.82 for its failure to contribute between 1995 and 2003. He suggested that ISN had over-contributed between 1982 and 1989 in the amount of approximately $895,000, but did not take these excess payments into account. Defendants' expert, by contrast, used overpayments from previous years to offset liabilities in later years, and opined that ISN had probably funded the Plan by more than was necessary. The district court credited the Secretary's expert, and held that defendants had to pay $720,763.89 (including interest) for ISN's failure to contribute to the Plan. It refused to allow defendants to offset ISN's liabilities in the years it did not fund the Plan with its earlier excess contributions. Defendants appeal the district court's grant of summary judgment and award of $720,763.89.

## II.

ERISA's primary aim is to protect individuals who participate in employee benefit plans. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S.

85, 90 (1983); *Bidwill v. Garvey*, 943 F.2d 498, 505 (4th Cir. 1991). These plans affect the "well-being and security of millions of employees and their dependents," 29 U.S.C. § 1001(a) (2000), and are of paramount importance to "the national economy, and . . . the financial security of the Nation's work force," *Boggs v. Boggs*, 520 U.S. 833, 839 (1997). But because plans often have immense assets, *see, e.g.*, *id.* at 840, the dangers of abuse in plan administration are apparent. ERISA was thus designed to deter "the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds." *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 326-27 (1997) (internal quotation marks omitted).

To effectuate this goal, Congress established "strict standards" of conduct for those with discretionary authority over employee benefit plans. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985). Most notably, ERISA requires fiduciaries to abide by the general duties of loyalty and care that were firmly rooted in the common law of trusts. *See id.* at 570-71; *see also Restatement (Second) of Trusts* §§ 170, 174 (1959). The duty of loyalty requires that a fiduciary "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), and thus plan assets generally cannot "inure to the benefit of any employer," *id.* § 1103(c)(1). A fiduciary also is prohibited from engaging in self-dealing, *id.* § 1106(b)(1), and from transacting with interested parties, *id.* § 1106(a)(1). Likewise, the duty of care requires that the fiduciary function "with the care, skill, prudence, and diligence . . . that a prudent man acting in a like capacity and familiar with such matters would use." *Id.* § 1104(a)(1)(B). When a breach of these duties occurs, a fiduciary must compensate the plan for any resulting loss, and the district court may grant "other equitable or remedial relief as [it] may deem appropriate, including removal of such fiduciary." *Id.* § 1109(a).

Removal is, however, not the usual course. In fact, removal can be detrimental for plan participants and employers alike. It imposes significant costs on plans, which must undergo an inevitable period of transition as a new fiduciary familiarizes itself with the plan's provisions. Constant turnover can also disrupt plan administration, and might cause delay in participants receiving vital benefits. Courts

should thus not dislodge fiduciaries for committing minor errors in their attempt to manage the plan and comply with a complicated statutory scheme. Rather, removal is only appropriate where fiduciaries "have engaged in repeated or substantial violations of their fiduciary duties." *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 659 n.6 (4th Cir. 1996); *see also Reich v. Lancaster*, 55 F.3d 1034, 1054 (5th Cir. 1995) (affirming removal of fiduciaries because of their "significant violations of their ERISA fiduciary duties"); *Restatement (Second) of Trusts* § 107 cmt. b (providing as grounds for removal, inter alia, "the commission of a serious breach of trust"). With this framework in place, we now turn to the facts of this case.

### III.

Defendants initially challenge the district court's conclusions that they breached their fiduciary duties and that their removal as plan fiduciaries was warranted. We find no error in the district court's determination. Defendants' repeated efforts to plunder the Plan's assets and minimize their own liabilities demonstrate that they were administering the Plan neither for the sole benefit of Plan participants and beneficiaries, *see* 29 U.S.C. § 1104(a)(1), nor with the skill and care of a prudent person in like circumstances, *see id.* § 1104(a)(1)(B). While one of their several dubious actions standing alone may have made the extraordinary remedy of removal a closer call, when their behavior is considered in the aggregate, it becomes evident that defendants abdicated their fiduciary obligations. We will discuss each of defendants' defalcations in turn.

### A.

As an initial matter, defendants misinterpreted the Plan in a manner that not only contradicted the Plan's plain language, but also violated ERISA. Fiduciaries often enjoy wide discretion to interpret the terms of an employee benefit plan. *See Colucci v. Agfa Corp. Severance Pay Plan*, 431 F.3d 170, 176 (4th Cir. 2005). There can be disagreements about the meaning of plan terms, and those disagreements ordinarily do not begin to give rise to questions of fiduciary breach. But defendants' interpretation in the instant case was highly questionable, and supports the conclusion that they were not acting with the requisite loyalty and care.

Under the terms of the Plan, an employee's benefits became "fully vested in him and nonforfeitable" after "his completion of five (5) Years of Service with the Company." Defendants interpreted these terms to require five years of participation in the Plan — and not five years of actual employment with ISN — before employee benefits became fully vested. As a result of this reading, employees did not receive vesting credit for their first year of employment, because they did not qualify to participate in the Plan until after their first year. In April 2000, defendants retroactively implemented this interpretation and ordered Principal to forfeit the benefits of former employees who had departed ISN prior to participating in the Plan for five years. Several former employees were surprised by this action, because they had received prior notice from Principal indicating that their benefits had become fully vested.

Defendants appear to have based their interpretation on the Plan's definition of "Year of Service." But this definition gives their reading no assistance. It provides:

> *Year of Service* shall mean: (a) any Plan Year during which an Employee has not less than 1,000 Hours of Service with the Company; and (b)(i) solely for purposes of [vesting], the 12-months' period beginning with the date the Employee's employment with the Company commenced if the Employee had not less than 1,000 Hours of Service with the Company during such period; (b)(ii) solely for purposes of [vesting], the 12-months' period beginning with the date the Employee's employment with the Company commenced if the Employee had not less than 1,000 Hours of Service with the Company during such period and neither the Plan Year beginning nor the Plan Year ending in such period was a Year of Service.

The Plan thus defines "Year of Service" with reference to an employee's "Service *with the Company*" and "employment *with the Company*" (emphasis added). It in no way defines the term by reference to an employee's *participation in the plan*. Defendants' interpretation therefore lacks even the most basic textual support, and is, as the district aptly noted, "nonsensical." *Malkani*, 216 F. Supp. 2d at 517.

Defendants' reading moreover contravened ERISA's minimum vesting requirements. In calculating the extent to which an employee's accrued benefits have vested, ERISA generally requires "all of an employee's years of service with the employer . . . [to] be taken into account." 29 U.S.C. § 1053(b)(1). Year of service is defined as "a calender year, plan year, or other 12-consecutive month period designated by the plan (and not prohibited under regulations prescribed by the Secretary) during which the participant has completed 1,000 hours of service." *Id.* § 1053(b)(2)(A). On its face, the statute, like the Plan, requires any year in which the employee has worked over 1,000 hours to apply when calculating whether an employee's benefits have vested. Yet defendants imposed a manufactured limit on the years that qualified toward vesting. This they could not do. *See* 29 C.F.R. § 2530.203-2(a) (2005) (plan cannot artificially postpone vesting).

Defendants presently make no argument to justify their interpretation, and only suggest that it does not establish a breach of their fiduciary duties. While a mistaken interpretation of plan terms hardly proves a fiduciary breach, *see Morgan v. Indep. Drivers Ass'n Pension Plan*, 975 F.2d 1467, 1470 (10th Cir. 1992), defendants' bizarre reading — violative of both the Plan and ERISA — surely supports the overall conclusion that they were not acting prudently in managing the Plan, *see* 29 U.S.C. § 1104(a)(1)(B). And it also bolsters the determination that defendants failed to act solely in the interest of Plan participants, because several employees were divested of benefits that Principal had previously announced were fully vested. *See id.* § 1104(a)(1).

## B.

Defendants also repeatedly requested Plan assets from Principal for ISN's alleged administrative expenses. They originally requested $435,761.52, and increased their demand to $706,264.54, even after Principal paid them $62,888.05. These requests — commencing on the day after the Secretary brought this suit — amply demonstrate defendants' lack of loyalty and care. *See* 29 U.S.C. § 1104(a)(1). Defendants requested large amounts even though they appeared to outsource the bulk of the Plan's administration to third-party administrators. They provided almost no documentation for their sizable demands, and they failed to indicate with any level of specificity the

services that ISN actually provided the Plan that would require such substantial remuneration. And they continued to pursue retroactive reimbursement for their so-called administrative expenses even after Principal repeatedly expressed its concern that reimbursement might violate ERISA and that defendants should discuss the matter with the DOL. On the record before us, therefore, there is no evidence to establish that defendants had a reasonable basis to pursue and receive these funds. It is thus not surprising that the $62,888.05 that defendants managed to extract from the Plan constituted a prohibited transaction under ERISA. *See* 29 U.S.C. §§ 1106(a)(1)(D), (b)(1) (fiduciary cannot transact with interested parties or engage in self-dealing). Had Principal acceded to defendant's full request for funds, the infraction would have been all the worse.

Defendants nonetheless believe that their requests for reimbursement were proper because they were authorized to receive these funds under an exception to ERISA's prohibited transaction provisions. *See* 29 U.S.C. § 1108(b)(2). This exception exempts from ERISA's list of prohibited transactions "[c]ontracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor." *Id.* A defendant of course does not breach any fiduciary duties if it makes a reasonable request for reimbursement pursuant to this provision. Defendants' request, however, had no objective basis in the exemption. For one, they never actually contracted or made arrangements with the Plan to cover ISN's administrative expenses. Rather, ISN incurred unspecified expenses and demanded reimbursement after the fact. There is no evidence that ISN's still unsubstantiated administrative services were necessary for the operation of the Plan or that ISN requested reasonable compensation. *See* 29 C.F.R. § 2550.408b-2(a)(1)-(3) (setting forth requirements to meet § 1108(b)(2) exemption). This exception thus does not legitimize defendants' attempts to drain the Plan, conduct which further evidences their failure to act with the requisite loyalty and care.

## C.

Finally, defendants directed Salomon to line ISN's corporate coffers with about $1.86 million — or seventeen percent — of the Plan's

total assets. To begin with, this instruction lacked a sound factual basis. Its foundation was George Morrison's assessment that ISN had previously made excessive contributions to the Plan. Morrison, however, indicated that he would have not recommended that defendants seek reimbursement on the basis of his admittedly incomplete and preliminary calculations. Defendants' hasty request was thus not the loyal or prudent course.

More importantly, had Salomon followed defendants' orders — instead of informing the DOL of the unusual request — ISN would have obtained Plan assets for its own benefit, in violation of ERISA's anti-inurement provision. *See* 29 U.S.C. § 1103(c)(1) ("the assets of a plan shall never inure to the benefit of any employer"). At bottom, this "provision refers to the congressional determination that funds contributed by the employer . . . must never revert to the employer." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 23 (2004) (internal quotation marks omitted). Obtaining Plan assets for contributions made many years in the past would surely have run afoul of this section.

Defendants nonetheless argue that the anti-inurement provision does not restrict the refund of employer contributions made as a result of a mistake of fact. To be sure, if an employer contributes funds "to a plan (other than a multiemployer plan) by a mistake of fact, [the anti-inurement provision] [does] not prohibit the return of such contribution to the employer within one year after the payment of the contribution." 29 U.S.C. § 1103(c)(2)(A)(i). But this exception afforded defendants no fair basis to pursue the return of their previous contributions. Since the Plan was not a multiemployer plan, the statute only supplied defendants with one year to seek a refund from the time ISN made a mistaken payment. *See Teamsters Local 639-Employers Health Trust v. Cassidy Trucking, Inc.*, 646 F.2d 865, 867 (4th Cir. 1981) ("[A]n employer [cannot] recover payments made more than a year before filing a claim for a refund under [§ 1103(c)(2)(A)(i)]."). *Compare* 29 U.S.C. § 1103(c)(2)(A)(i), *with id.* § 1103(c)(2)(A)(ii). Yet in 2001 defendants sought the return of contributions that ISN had made many years in the past, dating as far back as 1982.

Realizing that ERISA's mistake-of-fact provision is a slim reed on which to stand, defendants also suggest that they retained a federal

common law right — unmoored from any one-year limitation — to the return of excessive contributions. But "[t]he Supreme Court has been unequivocal in its warning that courts should be 'especially reluctant to tamper with [the] enforcement scheme embodied in the [ERISA] statute by extending remedies not specifically authorized by its text.'" *Rego v. Westvaco Corp.*, 319 F.3d 140, 148 (4th Cir. 2003) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002)). This caution is especially in order if an extra-statutory right "would 'disregard Congress' decision to limit the scope of [ERISA's express] remedies.'" *Provident Life & Accident Ins. Co. v. Cohen*, 423 F.3d 413, 425 (4th Cir. 2005) (quoting *Rego*, 319 F.3d at 149).

By authorizing the return of mistaken contributions within one year of payment, *see* 29 U.S.C. § 1103(c)(2)(A)(i), Congress struck a balance. On the one hand, it granted employers the ability to seek a limited recovery, recognizing the inequity that may arise when employers incur costly losses for honest errors. On the other, Congress secured peace of mind for plans and their participants. Uncertainty and instability could easily ensue from an open-ended remedy for mistaken contributions made many years in the past. *See, e.g.*, *Frank L. Ciminelli Constr. Co. v. Buffalo Laborers Supplemental Unemployment Benefit Fund*, 976 F.2d 834, 836 (2d Cir. 1992) ("Time is important because a fund generally must be able to rely upon its current calculation of total assets.").

Defendants ask us, however, to reconfigure this carefully crafted balance — and in the process to place a heavy weight on the employers' side of the scale — by creating a remedy severed from ERISA's time limits. This we refuse to do. It is Congress's job to set the appropriate equilibrium; judges must ensure its proper enforcement. *See Cohen*, 423 F.3d at 425. Since defendants had no justification for their imprudent and excessive demand — which would have violated ERISA had Salomon not recognized it for what it was — it yet again evinces their failure to act with the loyalty and care expected of ERISA fiduciaries.

## D.

In sum, defendants' repeated and questionable conduct established their breach of ERISA's standards. *See* 29 U.S.C. §§ 1104(a)(1),

1106. We caution, however, that differences over Plan interpretation and reasonable requests for reimbursement and expenses happen all the time and raise no question of a breach of fiduciary duty. *Compare Bidwill v. Garvey*, 943 F.2d 498, 507-09 (4th Cir. 1991) (holding that fiduciaries did not breach their obligations when they took reasonable actions under difficult circumstances). Here, however, defendants continually acted in an objectively unreasonable manner that conflicted with their duties of loyalty and care. Their conduct cannot be justified, and the district court was right to remove them as fiduciaries. *See* 29 U.S.C. § 1109(a); *Faircloth*, 91 F.3d at 659 n.6. The district court was also correct to compel the return of the $62,888.05 ISN obtained for its alleged administrative expenses. *See* 29 U.S.C. § 1109(a).

## IV.

Defendants also challenge the district court's conclusion, reached after a bench trial, that they owe $720,763.89 for ISN's failure to contribute to the Plan between 1995 and 2003. Specifically, defendants contend that the district court erred in refusing to use the excessive contributions that ISN allegedly made between 1982 and 1989 to offset the amounts owed in the years in which it did not contribute. Their arguments are largely duplicative of those given in Part III.C to justify their $1.86 million reimbursement request for allegedly mistaken contributions. We find them to be without merit for the reasons expressed above. Defendants' requested offset would violate ERISA's anti-inurement provision, because Plan assets would benefit ISN. *See* 29 U.S.C. § 1103(c)(1). And the one-year exception to this restriction for employer contributions made by mistake of fact does not apply. *See id.* § 1103(c)(2)(A)(i); *Cassidy Trucking*, 646 F.2d at 867.

## V.

Defendants have suggested throughout that none of their requested withdrawals would have prejudiced employees participating in the Plan because the employees had no right to these funds in the first place. But the employees did have a right to expect that the funds in the Plan would be invested for their benefit and that they would realize whatever returns the investments generated. And defendants have failed to illustrate how their repeated and belated requests for Plan

assets would not upset the legitimate expectations of present and former employees, who rely on the balances indicated on their account statements to prepare for retirement. Rather, defendants' attempts to deplete Plan assets reveal their conscious disregard of the role that pension plans play in making retirement for workers a more secure and satisfying period of life. It is this basic transgression of ERISA's central purposes that breached defendants' fiduciary responsibilities, and the proceedings below reflected in all respects an appropriate judicial response to that wrongdoing. We therefore affirm the district court's judgment in its entirety.

*AFFIRMED*